IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOSE VEGA, ) | |
|    ID #46462-177, ) | |
|       Movant, ) | |
| ) | No. 3:20-CV-1748-B-BH |
| vs. ) | No. 3:17-CR-341-B(4) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
|       Respondent. ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on June 30, 2020 (doc. 2), should be **DENIED** with prejudice.

**I.   BACKGROUND**

Jose Vega (Movant) challenges his federal conviction and sentence in Cause No. 3:17-CR-341-B(4). The respondent is the United States of America (Government).

**A.   Conviction and Sentencing**

After being charged by complaint, indictment, and superseding indictment, on May 10, 2018, Movant was charged in a superseding information with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Count One), and illegal reentry after removal from the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(1) (Count Two). (*See* docs. 1, 43, 84, 265.)[2]  On June 14, 2018, he pled guilty to both counts of the

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:17-CR-341-B(4).

superseding information, under a plea agreement. (*See* docs. 268, 314.)

In his plea agreement, Movant stated that he understood and waived his rights to plead not guilty, have a trial by jury, have his guilt proven beyond a reasonable doubt, confront and cross-examine witnesses, and call witnesses in his defense, and to not be compelled to incriminate himself. (*See* doc. 268 at 1-2.)[3] The plea agreement set out the range of punishment for both counts and stated that Movant had reviewed the federal sentencing guidelines with counsel, he understood his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and no one could predict with certainty the outcome of the Court's consideration of the guidelines. (*See id.* at 2-4.) He understood that the Court had sole discretion to impose his sentence. (*See id.* at 4.) He had thoroughly reviewed all legal and factual aspects of the case with counsel, was satisfied with counsel's representation, and believed that it was in his best interest to enter into the plea agreement and plead guilty. (*See id.* at 7.) His guilty plea was freely and voluntarily made; it was not the result of force or threats, or of promises apart from those included in the plea agreement; and there were no guarantees or promises from anyone about what his sentence would be. (*See id.* at 6.) He waived his right to appeal and to contest his convictions and sentences in a collateral proceeding, except in limited circumstances set out in the plea agreement. (*See id.* at 6-7.) In exchange, the Government agreed not to bring any additional charges against him based on the conduct underlying and related to his guilty plea. (*See id.* at 5-6.) The Government would also file a routine supplement, regardless of whether there were any additional terms, and would dismiss any remaining charges in the pending indictment after sentencing. (*See id.* at 6; doc. 269.)

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Movant also agreed in his plea agreement that the factual resume he signed was true and correct and would be submitted as evidence. (*See* doc. 268 at 2.) In the factual resume, Movant stipulated that beginning in January 2017, he and others conspired to possess with intent to distribute a mixture and substance containing methamphetamine. (*See* doc. 267 at 2-3.) He also stipulated that he purchased and distributed methamphetamine on several occasions during the period of the conspiracy, including on June 8, 2017, when he met with a co-conspirator at a mechanic shop in Dallas, Texas, and delivered four kilograms of methamphetamine to the co-conspirator for $26,000. (*See id.* at 3.) He further stipulated that law enforcement located five firearms during a search conducted at the mechanic shop on June 16, 2017. (*See id.* at 3-4.)

At his re-arraignment on June 14, 2018, Movant acknowledged under oath that he understood the charges against him and had committed each of the essential elements of the two charged offenses. (*See* doc. 720 at 12-14.) He affirmed that he had discussed his plea agreement, plea agreement supplement, and factual resume with counsel; all his agreements with the Government were set out in the plea agreement and its supplement; and the stipulated facts set forth in his factual resume were true and correct. (*See id.* at 15, 20-21.) He affirmed his understanding that he should never depend or rely on any statement or promise, including from his counsel, as to some exact sentence he would receive because only the Court could decide his sentence. (*See id*. at 9-10.) He understood that the Court would impose his sentence after consideration of a presentence investigation report (PSR), any challenges to the PSR, possible departures from the sentencing guidelines, and other sentencing factors. (*See id*. at 10-11.) Movant acknowledged that no one had threatened him or in any way tried to make him plead guilty, and that no one had made any promise or assurance of any kind to get him to plead guilty. (*See id*. at 15-16.) He acknowledged that by pleading guilty, he was subjecting himself to a maximum term

of 20 years' imprisonment on Count One and 10 years' imprisonment on Count Two of the superseding information. (*See id.* at 18-19.) He pled guilty to both counts, and the Court found that his guilty plea was knowing and voluntary. (*See id*. at 19-21).

On August 22, 2018, the United States Probation Office (USPO) prepared a PSR in which it applied the 2016 United States Sentencing Guidelines Manual. (*See* doc. 387-1 at ¶ 53.) The PSR determined that Movant was accountable for 379,209.6 kilograms of marijuana equivalent based on surveillance, intercepted calls, Movant's stipulations in his factual resume, and evidence from the search of the mechanic shop. (*See id.* at ¶¶ 23-26, 30-31, 37, 44.) Because Count One involved 90,000 kilograms or more of marijuana equivalent, the base offense level was 38 under the drug quantity table set out in U.S.S.G. § 2D1.1(c)(1). (*See id.* at ¶ 55.) Two levels were added under U.S.S.G. § 2D1.1(b)(1) based on the five firearms, including one which Movant claimed to own, that were found during the execution of a search warrant at the mechanic shop, and two levels were added for importation of methamphetamine from Mexico. (*See id*. at ¶¶ 56-57.) Another two levels were added based on Movant's maintenance of the mechanic shop for the purpose of storing and distributing a controlled substance, resulting in an adjusted offense level of 44 for Count One. (*See id.* at ¶¶ 58, 62.) The PSR calculated the base offense level for Count Two at 8, and eight levels were added based on specific characteristics of the offense, resulting in an adjusted offense level of 16 for Count Two. (*See id.* at ¶¶ 63-64, 68.)

Adjusting for multiple counts, the combined adjusted offense level was the greater adjusted offense level for Count One, from which three levels were deducted for acceptance of responsibility, resulting in a total offense level of 41. (*See id.* at ¶¶ 69-76.) Based on a total offense level of 41 and a criminal history category of II, the resulting guideline imprisonment range was 360 years to life. (*See id.* at ¶ 116.) The PSR noted that because the advisory guideline range was

greater than the statutory authorized maximum sentence for Counts One and Two, the guideline imprisonment range became 360 months. (*See id.*) No objections to the PSR were filed.

On May 14, 2019, Movant filed a sentencing memorandum and motion for a non-guideline sentence at or below 240 months' imprisonment. (*See* doc. 622.) On May 22, 2019, the Government moved for a downward departure under U.S.S.G. § 5K1.1, requesting "that the Court depart **one level** downward from the guideline range indicated for a level 37 with criminal history category II in order for [Movant] to benefit from this motion[.]" (*See* doc. 626 at 9 (emphasis in original).)

At the sentencing hearing on May 23, 2019, Movant confirmed he had read the PSR with counsel and had no questions, and the parties confirmed that they had no objections to the PSR. (*See* doc. 736 at 2-4.) The Government pointed out that the statutory maximum imprisonment term was 240 months for Count One, and 10 years for Count Two, and the defense agreed. (*See id.* at 5.) In response to the Court's questions about how the request for a one-level departure in the § 5K1.1 motion would reduce Movant's level from 41 to 40, which still yielded a guideline range above the 240-month statutory maximum (292 to 365 months), the Government explained that the statutory maximum of 240 months' imprisonment for Count One corresponded to the guideline range for an offense level of 37. (*See id.* at 13.) For Movant to receive the benefit of the one-level downward departure, the applicable offense level would become 36, and with a criminal history category of II, the applicable guideline imprisonment range would be 210 to 262 months. (*See id.* at 13-14.) The Court accepted the Government's recommendation and granted the § 5K1.1 motion. (*See id.* at 14.) By judgment dated May 24, 2019, Movant was sentenced to a total term of 210 months' imprisonment, to be followed by a three-year term of supervised release. (*See* doc. 628 at 1-3.) On appeal, appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967),

and the United States Court of Appeals for the Fifth Circuit (Fifth Circuit) dismissed the appeal on May 28, 2020. *See United States v. Vega*, 807 F. App'x 362 (5th Cir. 2020). Movant did not file a petition for a writ of certiorari with the Supreme Court.

**B.     Substantive Claims**

Movant asserts the following grounds for relief:

(1) Movant was denied effective assistance of counsel;

(2) Defense counsel was ineffective failure [sic] to object to two-level weapon enhancement;

(3) Drug premises enhancement does not apply; and

(4) Government Violated a Plea Agreement.

(No. 3:20-CV-1748-B-BH, doc. 2 at 4–8.) The Government filed a response on September 30, 2020. (*See id.,* doc. 8.) Movant did not file a reply.

## II.     SCOPE OF RELIEF UNDER 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of inquiries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the

6

error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

###     III.    INEFFECTIVE ASSISTANCE OF COUNSEL

In each of his grounds for relief, Movant contends that his trial counsel rendered ineffective assistance. (*See* No. 3:20-CV-1748-B-BH, doc. 2 at 4-8; doc. 3 at 2-6, 8-10.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

### A.   **PSR Enhancements**

In his first, second, and third grounds, Movant contends that counsel was ineffective for failing "to properly raise and litigate the weapon enhancement of two-levels under USSG § 2D1.1(b)(1)," and to "properly raise and litigate the drug premises enhancement." (No. 3:20-CV-1748-B-BH, doc. 3 at 3; *see also id.*, doc. 2 at 5, 7; doc. 3 at 4-6.)

Regarding the firearm enhancement under § 2D1.1(b)(1), Movant claims that counsel failed to "object to two-level weapon enhancement," and failed "to properly investigate the case and litigate to the Trial Court that [Movant] was not responsible for weapons found in his employer's mechanic shop." (No. 3:20-CV-1748-B-BH, doc. 2 at 5; *id.*, doc. 3 at 5.) He alleges that counsel "never sought any discovery . . . to determine if government [sic] had submitted the firearm in question for fingerprint analysis to develop the record as to who actually had possessed the firearms found during the sweep of the Mechanic Shop were [sic] Movant worked and was found to be present," and that "[c]ounsel made no arguments that the mechanic shop was under the control of the owner Luis Amador that [sic] the weapon found hidden within the shop was not within reach of Movant's control when the weapon was recovered." (*Id.*, doc. 3 at 5.) According

8

to Movant, he "was never aware that a weapon or weapons existed in the Mechanic Shop," and the "record will demonstrate that he never carried, used, or possessed a firearm during the commission of a drug trafficking offense." (*Id.*)

Regarding the drug premises enhancement under § 2D1.1(b)(12), Movant contends that "[c]ounsel failed to argue at sentencing that the application of a two-level enhancement for maintaining a drug establishment was not applicable[.]" (*Id.*, doc. 2 at 7.) He claims "he was a worker, employed by the owner of the Business Mechanic Shop Amador, who could be considered an unindicted co/conspirator [sic]. [Movant] was present as a mechanic." (*Id.*, doc. 3 at 8.) He alleges that, "[b]ased upon the information available to the sentencing court, there was no substantial evidence that [Movant] was using the premises as a drug related premises[.]" (*Id.*)

Had counsel successfully challenged the enhancements on these bases, Movant's adjusted offense level for Count One would have been reduced by four levels, from 44 to 40. (*See* doc. 387-1 at ¶¶ 56, 58, 62.) Because this new adjusted offense level for Count One would have remained the greater adjusted offense level of the two charged counts, his new total offense level after a three-level reduction for acceptance of responsibility would have been 37. (*See id.* at ¶¶ 69-76.) Based on a new total offense level of 37 and a criminal history category of II, Movant's guideline range would have been 235 to 293 months' imprisonment. *See* U.S. Sentencing Guidelines Manual ch. 5, pt. A, Sentencing Table. As discussed, the Government requested a one-level downward departure "from the guideline range indicated for a level 37," i.e., the same offense level that would have applied to Movant absent the challenged firearm and drug premises enhancements. (*See* doc. 626 at 9; doc. 736 at 13-14.) The Court granted the motion and reduced Movant's offense level to 36, which resulted in an applicable guideline sentencing range of 210 to 262 months' imprisonment, and it sentenced him to 210 months' imprisonment, the lowest sentence in the

9

guideline imprisonment range that would have been applicable to him without the challenged firearm and drug premises enhancements. (*See* doc. 736 at 13-14, 17-18; doc. 628 at 2.)

Movant fails to provide any facts or evidence beyond conclusory statements showing a reasonable probability that his sentence would have been less harsh had counsel successfully challenged the firearm and drug premises enhancements. His conclusory allegations of prejudice are insufficient to carry his burden under *Strickland*. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."). Because his allegations fail to demonstrate *Strickland* prejudice, the performance prong need not be addressed. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995). Movant has failed to satisfy his burden under *Strickland*, and these claims should be denied.

**B.     Sentence Exposure**

In his first ground, Movant contends that "[t]rial counsel failed to effectively engage in the plea negotiation process and accurately inform his client of the accurate legal sentence possible under the law." (No. 3:20-CV-1748-B-BH, doc. 3 at 4.)

"'[T]he negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)). "'When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice.'" *Id.* (quoting *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012)).

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland.* When the defendant lacks a full understanding of the risks of going to trial, he is unable to

10

> make an intelligent choice of whether to accept a plea or take his chances in court. By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

*United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004) (citations and internal quotation marks omitted). A significant miscalculation between counsel's erroneous sentence estimate and the actual sentencing range can constitute deficient performance. *See id.* at 437 (finding that counsel was deficient for advising his client that he faced only 6 to 12 months' imprisonment if convicted based on misunderstanding of the guidelines, when he actually faced a range of 70 to 87 months); *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (stating that "[a]n attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial[,]" and remanding for determination of whether alleged misrepresentation was actually made).

Even assuming for purposes of this motion only that counsel rendered deficient performance during plea negotiations by inaccurately informing Movant about his sentence exposure, as alleged, deficient performance alone is insufficient to establish relief under § 2255. *Strickland* also requires a showing of resulting prejudice. When a movant

> adduce[s] no proof that he was promised or assured of a specific sentence, but, rather, that counsel gave him his "best estimate" of what sentence might be given if he pled guilty . . . [and when] [t]he plea agreement and the record of the change of plea hearing are replete with references to the fact that the District Court would make the determinations with respect to his sentence under the sentencing guidelines, that the District Court could decline to follow recommendations, and that no promises had been made with respect to the sentence that the District Court would impose[,]

the district court properly denies relief for lack of prejudice. *United States v. Ritter*, 93 F. App'x 402, 404-05 (3d Cir. 2004); *see also United States v. Mackay*, No. 3:04-CV-0413-D, 2007 WL 700895, at *26-27 (N.D. Tex. Mar. 6, 2007).

Here, Movant was advised both through his plea agreement and by the Court in person that by pleading guilty, he was subjecting himself to a statutory maximum period of imprisonment of 20 years on Count One and 10 years on Count Two. (*See* doc. 268 at 2; doc. 720 at 18-19.) He also affirmed in the plea agreement that he understood that his sentence would be imposed after the Court's consideration of the sentencing guidelines, which were advisory and not mandatory, no one could predict the outcome of the Court's consideration of the guidelines in his case, and the actual sentence imposed was solely in the discretion of the Court. (*See* doc. 268 at 3-4.) He swore in open court that no one had threatened him or in any way tried to make him plead guilty, no one had made any promise or assurance of any kind outside of the plea documents to get him to plead guilty, and he understood he should never depend on any statement or promise by anyone, including counsel, as to what his exact sentence might be because only the Court could make that decision. (*See* doc. 720 at 9-10, 14-16.)

Regardless of what his counsel told him about his possible sentence exposure, Movant cannot show prejudice under *Strickland* because his plea agreement and responses under oath to the Court's questions show that he was clearly informed about and understood his maximum sentence exposure when he pled guilty under the plea agreement.[4] Movant is therefore not entitled

---

[4] The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that his attorney made alleged promises to him despite making inconsistent representations in court when entering his plea. To be entitled to an evidentiary hearing, the movant must present evidence of: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)). A movant must produce independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties. *Id*. When the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in light of other evidence

to § 2255 relief on this ground, and it should be denied.[5]

### C. Mandatory Minimum Sentence

In his first and fourth grounds, Movant contends that counsel "was ineffective by failing to argue that the government had recommended a 10 year mandatory minimum in exchange for cooperation as part of the plea agreement." (No. 3:20-CV-1748-B-BH, doc. 3 at 8; *see also id.*, doc. 2 at 8; doc. 3 at 4.) According to Movant, "pursuant to Fed. R. Cim. P. Rule 11(c)(1)(B) the parties, the government agreed to recommend that [Movant] be sentence [sic] to a 10 year mandatory minimum, which is what was represented to Movant by Counsel of Record." (*Id.*, doc. 3 at 9.) He claims that in exchange for providing substantial assistance, "it was agreed that he would receive a downward departure to a minimum of 10 years. However, the stipulated term that government agreed to seek at sentence [sic] was never mention [sic]." (*Id.*) The Government contends that this claim is procedurally defaulted and without merit. (*See id.*, doc. 8 at 9-11.)

---

in the record," however, the Court may dispense with his allegations without an evidentiary hearing. *Id*. Here, Movant has not provided evidence of the specific terms of any alleged promise, i.e., specifically where and when counsel made the promise that allegedly caused him to plead guilty, and he has not identified any eyewitness to the promise. Nor has he provided any independent indicia of the merit of any alleged promise. To the extent his § 2255 motion may be liberally construed as arguing that counsel promised he would receive a specific sentence, he has not demonstrated he is entitled to an evidentiary hearing or to relief on this basis.

[5] To the extent this ground may be liberally construed as challenging the voluntariness of his guilty plea, inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity"). Movant has failed to overcome the presumption of verity given to his sworn statements in open court, and the great evidentiary weight accorded to court records. *See Blackledge*, 431 U.S. at 74. His contemporaneous plea agreement, factual resume, and sworn statements before the Court contradict any allegations that he was unaware of his sentence exposure or the consequences of his plea due to counsel's alleged deficiencies. He has not shown that his guilty plea was involuntary, or a reasonable probability that he would have decided not to plead guilty and would have proceeded to trial absent counsel's alleged deficiencies. He is not entitled to § 2255 relief on this basis, and to the extent considered, the claim should be denied.

When considering an alleged breach of a plea agreement, the Court applies general principles of contract law and considers "'whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement.'" *United States v. Lewis*, 476 F.3d 369, 387-88 (5th Cir. 2007) (quoting *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993)). The movant bears the burden of demonstrating a breach of the agreement by a preponderance of the evidence. *Id*. at 387.

Here, the record shows that Movant's plea agreement contains no agreements or promises by the Government to recommend any specific sentence under Rule 11(c)(1)(B) or otherwise. (*See generally* doc. 268.) Movant acknowledged in the plea agreement that he understood and agreed that the sentence imposed was solely in the discretion of the Court after consideration of the guidelines and statutory factors, the plea agreement was a complete statement of the parties' agreement, and no promises or representations had been made by the Government except those set forth in writing in the plea agreement. (*See id*. at 3-4, 7-8). He further swore in open court that everything he agreed to with the Government was set out in writing in the plea agreement and its supplement, and no other promise or assurance had been made to him other than what was in the written plea agreement. (*See* doc. 720 at 15-16.)

Even assuming that the claim is not procedurally barred, the record shows no agreement between the parties that the Government would recommend a 10-year mandatory minimum sentence in exchange for cooperation from Movant.[6] His claim that the Government violated the plea agreement is unsupported by the record and without merit.[7] *See Ross v. Estelle*, 694 F.2d

---

[6] Under the terms of the plea agreement, Movant was not subject to any mandatory minimum sentence of imprisonment, meaning that the minimum sentence for each of the charged counts was 0 years. (*See* doc. 268 at 2-3.)

[7] To the extent Movant's § 2255 motion raises an independent claim that the Government violated the plea agreement, it is without merit for the same reason and should be denied.

14

1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). Because there was no violation of the plea agreement, trial counsel did not render deficient performance by failing to make a futile or meritless argument. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (holding that counsel is not deficient for failing to raise a meritless argument); *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). Additionally, Movant's conclusory allegations of prejudice are insufficient to show a reasonable probability that the result of his sentencing proceedings would have been different, i.e., that his sentence would have been less harsh, absent counsel's alleged deficiency. *See Miller*, 200 F.3d at 282. Movant is not entitled to relief on this claim, and it should be denied.

**D.    Other Claims**

Also in his first ground, Movant contends that counsel "failed to file timely objections to the Pre Sentence Report," and "failed to effectively counter the government's sentencing contentions that [Movant] required aggravated enhancements." (No. 3:20-CV-1748-B-BH, doc. 3 at 3-4.)  Other than his claims regarding the two-level enhancements for possession of a firearm under § 2D1.1(b)(1) and for maintaining a drug premises under § 2D1.1(b)(12), Movant does not identify any other bases on which his PSR was objectionable, or on which the Government's position at sentencing could be challenged.  Accordingly, to the extent his pleadings seek to allege claims separate from those already raised regarding his firearm and drug premises enhancements, his conclusory allegations are insufficient to show deficient performance or prejudice under

15

*Strickland*.[8] *See Miller*, 200 F.3d at 282; *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("'[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'"); *Rodriguez-Hernandez v. United States*, No. 3:17-CV-1614-N-BH, 2017 WL 3128161, at *3 (N.D. Tex. June 21, 2017) (citing cases). Because Movant has failed to satisfy both *Strickland* prongs as to these claims, they are without merit and should be denied.

### IV.     MISAPPLICATION OF THE SENTENCING GUIDELINES

In his third ground, Movant contends that the Court's "conclusion that the two-level enhancement [of § 2D1.1(b)(12) for maintaining a drug premises] should apply is clearly erroneous." (No. 3:20-CV-1748-B-BH, doc. 3 at 8; *see also id.*, doc. 2 at 7; doc. 3 at 2, 6.) He argues that the enhancement under § 2D1.1(b)(12) "is improper as it is not based upon sufficient credible evidence in the record, the application is based upon an erroneous construction for the purpose and structure of the enhancement itself, and the application impermissibly raises his base offense level and, thus, the advisory sentencing guideline range upon which his sentence is based." (*Id.*, doc. 3 at 6.)

It is well established that the technical application of the sentencing guidelines is not subject to collateral review in a § 2255 motion. *See, e.g., United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996). "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Williamson*, 183 F.3d at 462. Accordingly, Movant's claim that the Court committed

---

[8] Movant's claims of ineffective assistance of counsel relating to the firearm and drug premises enhancements fail for the reasons discussed.

error in applying the drug premises enhancement under § 2D1.1(b)(12), his claim is not cognizable under § 2255 and entitles him to no relief.

The claim also lacks merit. Under § 2D1.1(b)(12), a defendant's base offense level in increased by two if "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance[.]" U.S.S.G. § 2D1.1(b)(12). The commentary to § 2D1.1(b)(12) provides additional guidance for when the enhancement applies:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.
>
> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1 cmt. n.17. The commentary makes it "clear that there can be more than one primary use of a building for purposes of evaluating the enhancement." *United States v. Lopez*, 750 F. App'x 349, 351 (2018). The Fifth Circuit has repeatedly held that "the evidentiary bar for establishing a primary use 'has not been set high.'" *United States v. Galicia*, 983 F.3d 842, 844 (5th Cir. 2020) (citations omitted). Further, the primary uses of a premises "need not be equivalent" to apply the enhancement. *See id*.

Here, the record shows that the information on which the Court relied in the PSR to support the enhancement was obtained through an independent investigation by the USPO, which involved

17

a review of the charging documents, factual resume, and investigative materials from the Drug Enforcement Agency (DEA) that were verified and supplemented through interviews with DEA officers. (*See* doc. 387-1 at ¶ 11.) Through surveillance, telephone intercepts, searches, and statements and admissions by Movant, the criminal investigation revealed that Movant received and distributed illegal drugs at the mechanic shop. (*See id.* at ¶¶ 25-26, 28-31, 33-34.) Additionally, Movant reported that he owned the mechanic shop, which was verified through the investigation of the offense. (*See id.* at ¶ 108.) Based on this, the PSR added two levels to Movant's offense under § 2D1.1(b)(12) because he maintained the mechanic shop for the purpose of storing and distributing a controlled substance. (*See id.* at ¶ 58.)

A PSR "generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (citation and internal quotation marks omitted). While "a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999) (quoting *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994)). Further, "[a] defendant's rebuttal evidence must demonstrate that the information contained in the PSR is 'materially untrue, inaccurate, or unreliable,' and '[m]ere objections do not suffice as competent rebuttal evidence.'" *Id.* (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).

Movant has provided no evidence to rebut the facts and evidence upon which the enhancement was applied in the PSR. His contentions that maintaining and distributing illegal drugs was not one of his primary or principle uses for the mechanic shop because he was an employee of someone else who allegedly owned the shop and "who could be considered an

unindicted co/conspirator [sic]," and because "he was present as a mechanic," are without merit. (No. 3:20-CV-1748-B-BH, doc. 3 at 8.) Whether he was the owner of the shop and whether he also worked there as a mechanic do not rebut the evidence and admissions that he used the shop to distribute illegal drugs multiple times during the charged offense period of the conspiracy. As noted, primary uses of a premises "need not be equivalent" for the enhancement to apply. *Galicia*, 983 F.3d at 844 (affirming application of § 2D1.1(b)(12) where the defendant lived and raised his family in the premises at issue for 35 years, only stored drugs in his garage for a few hours three times in a 2.5-year period, and had two scales in a storage shed). Because Movant has failed to provide rebuttal evidence demonstrating that the disputed information in the PSR is materially untrue, inaccurate, or unreliable, he has not shown that the enhancement was erroneously applied.

Accordingly, even if Movant's allegations were cognizable in this habeas action, they do not entitle him to § 2255 relief. The claim should be denied.

## V.      EVIDENTIARY HEARING

Movant requests an evidentiary hearing. (*See* No. 3:20-CV-1748-B-BH, doc. 2 at 13.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *Reed*, 719 F.3d at 373 (citation omitted). Movant has failed to demonstrate the existence of a factual dispute that creates a genuine issue, or to come forward with independent indicia in support of the likely merit of his claims. *See id.* He has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

## VI.      RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person*

19

*in Federal Custody*, received on June 30, 2020 (doc. 2), should be **DENIED** with prejudice.

**SIGNED this 1st day of May, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE